**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 2:13-CV-03077-VEB

KAYLEN PEDERSON,

                Plaintiff,

DECISION AND ORDER

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

## I. INTRODUCTION

In May of 2006, Plaintiff Kaylen Pederson applied for Supplemental Security Income ("SSI") Benefits under the Social Security Act. The Commissioner of Social Security denied the application.

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On April 2, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 21).

## II. BACKGROUND

The procedural history may be summarized as follows:

On May 25, 2006, Plaintiff applied for SSI benefits, alleging disability beginning August 5, 2004. (T at 129-31).[1]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").   On November 3, 2008, a hearing was held before ALJ Paul Gaughen. (T at 28). Plaintiff was not present, but appeared through his attorney. (T at 30). The ALJ received testimony from Sharon Volter, a vocational expert (T at 32-35).  A further hearing was held on May 29, 2009. (T at 37).  Plaintiff appeared with his attorney

---

[1] Citations to ("T") refer to the administrative record at Docket No. 13.

and testified. (T at 52-63). The ALJ also received testimony from Dr. Steven Gerber, a medical expert (T at 42-52) and Dan McKinney, a vocational expert (T at 63-66).

On August 27, 2009, ALJ Gaughen issued a written decision denying the application for benefits and finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (T at 12-27).   The Social Security Appeals Council denied Plaintiff's request for review on December 23, 2010.  (T at 1-5).

On February 23, 2011, Plaintiff commenced an action in the United States District Court for the Eastern District of Washington seeking judicial review.  (T at 400-406).   On March 22, 2012, the matter was remanded by Court Order (upon stipulation of the parties) for further administrative proceedings. (T at 407-414).

A further administrative hearing was held on December 11, 2012, before ALJ Timothy Mangrum. (T at 351).  Plaintiff appeared with his attorney and testified. (T at 360-89). Trevor Duncan, a vocational expert, also testified. (T at 390-94).   On April 23, 2013, ALJ Mangrum issued a decision denying Plaintiff's application for benefits. (T at 333-50).

On July 29, 2013, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on November 8, 2013. (Docket No. 12).

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

Plaintiff filed a motion for summary judgment on February 3, 2014. (Docket No. 16). The Commissioner moved for summary judgment on March 17, 2014. (Docket No. 17). Plaintiff filed a reply memorandum of law on April 1, 2014. (Docket No. 20). As noted above, the parties consented to the jurisdiction of a Magistrate Judge. (Docket No. 7).

For the reasons set forth below, the Commissioner's motion is granted, Plaintiff's motion is denied, and this case is closed.

## III. DISCUSSION

### A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and

vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv),

5

416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.

1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision

ALJ Mangrum found that Plaintiff had not engaged in substantial gainful activity since May 25, 2006, the alleged onset date. (T at 338). The ALJ determined that Plaintiff's status post cardiac valve replacement, hypertension, and obesity were impairments considered "severe" under the Act. (Tr. 338-39).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 339). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR § 416.967 (a), except that he could not push or pull with the bilateral upper extremities, operate foot controls bilaterally with the lower extremities, or climb ladders, ropes, or scaffolds, and was limited to occasional stair climbing. (T at 339-44). The ALJ found that Plaintiff was unable to perform his past relevant work as a

flooring installer. (T at 344). However, considering Plaintiff's age (26 years old on the date the application was filed), education (limited), work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 344-45).

As such, the ALJ concluded that Plaintiff had not been disabled, as defined under the Act, since May 25, 2006 (the application date) and was therefore not entitled to benefits. (Tr. 345).

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed. He offers four (4) main arguments in support of this position. First, Plaintiff argues that the ALJ erred by failing to account for limitations caused by sleep apnea and insomnia. Second, Plaintiff contends that the ALJ did not follow the Appeals Council's directive to develop the record concerning his mental health. Third, Plaintiff asserts that the ALJ did not follow the Appeals Council's directive to incorporate a handling limitation. Fourth, he argues that the ALJ did not properly weigh certain medical opinions. This Court will address each argument in turn.

/////

/////

/////

# IV. ANALYSIS

## A.    Sleep Apnea and Insomnia

A treatment note from August 2007 described Plaintiff as "always feel[ing] tired," sleeping "poorly" with "quite loud snoring [and] stopping of breathing," and waking up "feeling tired and . . . exhausted." (T at 282).  Dr. David Krueger, a treating physician, diagnosed sleep apnea and opined that it was Plaintiff's "major problem" because it was "driving his blood pressure, his palpitations, his fatigue, his weight gain, his inability to exercise or diet and thus, his lipids, etc." (T at 283).  A sleep study was recommended, but was not conducted due to insurance issues. (T at 277).

In January of 2010, Mary E. Schlater, a treating nurse practitioner, diagnosed Plaintiff with sleep apnea and opined that it would cause moderate limitations with regard to sitting, standing, walking, lifting, handling, carrying, seeing, hearing, communicating, and understanding or following directions. (T at 566).  She recommended treatment with a CPAP mask and machine. (T at 567).

The ALJ referenced Plaintiff's sleep apnea, the allegations of insomnia and fatigue, and the recommendation for a CPAP machine. (T at 341).  Plaintiff argues that the ALJ should have found sleep apnea to be a distinct medical impairment and contends that the ALJ erred by failing to assess limitations arising from that

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

impairment.   However, the evidence indicates that the effect of Plaintiff's sleep apnea was to aggravate his cardiac and weight problems (T at 283), which the ALJ thoroughly discussed and incorporated into his RFC determination. (T at 340-44). Other than Ms. Schlater, no treating provider assessed any additional work-related limitations arising from sleep apnea.   The ALJ acted within his discretion in discounting Ms. Schalter's opinion, which was provided in a conclusory "checkbox" form without any supporting clinical findings. The ALJ is not obliged to accept a medical opinion that is "brief, conclusory and inadequately supported by clinical findings." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir. 2007) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

Further, the assessments of two treating physicians, who were aware of Plaintiff's sleep difficulties, support the ALJ's conclusion that Plaintiff retained the RFC to perform sedentary work.  Dr. Paul Tompkins, a treating physician, opined in December of 2012 that Plaintiff's cardiac condition was "good to excellent" and indicated that he was capable of sedentary work. (T at 777).   Dr. Laura Lascar, another treating physician, reported that Plaintiff would need to avoid "strenuous physical activity," but could "perform desk jobs." (T at 224).

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

This Court finds substantial evidence supporting the ALJ's decision and no reversible error with regard to the consideration of Plaintiff's sleep apnea complaints and symptoms.

**B.    Development of Record Concerning Mental Health**

During the first administrative hearing, Plaintiff's counsel suggested that Plaintiff be referred for a consultative psychiatric examination. (T at 70).  The first ALJ agreed (T at 71), but no such examination was ever performed. In June of 2012, the Appeals Council issued a Remand Order, in which they noted, *inter alia*, the failure to obtain the consultative psychiatric examination and directed the ALJ to further develop the record regarding Plaintiff's mental impairments. (T at 418).

Following remand, at the conclusion of the second administrative hearing, the ALJ made the following observation: "Okay. I don't know. I'm concerned about some of the mental aspects, but I don't know that it warrants having a [consultative examination] on it, because what I'm more concerned with – and not so much about the . . . IQ question, because I . . . think that he's shown that functionally he does pretty well – my concern is the anxiety . . . and the depression." (T at 394-95).  The ALJ and Plaintiff's counsel then discussed their concern about whether Plaintiff

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

(who had suffered a significant coronary event)[2] was a "cardiac cripple," *i.e.* a person who suffers from debilitating fear of a cardiac event. (T at 395).  The ALJ explained that he felt this was the "mental aspect" that really "stands out in this case." (T at 395).  However, the ALJ noted that he had received testimony from Plaintiff at the hearing and questioned whether a consultative examination would yield additional information. (T at 396).

The ALJ did not order a consultative examination.  In his decision, the ALJ explained that a consultative examination for IQ testing was not necessary. (T at 343).  Although the record indicated that Plaintiff had received special education supports in school, the ALJ noted that those services were limited (extra help with reading and writing) and provided when Plaintiff was 10 years old (he was 33 at the time of the hearing). (T at 343).  The ALJ also cited "very limited mental health evidence in the record to support more than mild limitations in any work-related functioning area." (T at 343).

Plaintiff contends that the ALJ erred by failing following the Appeals Council's directive to further develop the record concerning his mental health

---

[2] In August of 2004, Plaintiff underwent an aortic aneurysm repair and aortic valve replacement after being diagnosed with an aortal aneurysm. (T at 17).

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

impairments.  In particular, Plaintiff argues that the ALJ was obliged to order a consultative psychiatric examination.

As a threshold matter, this Court declines to review this argument insofar as it is based on the ALJ's non-compliance with the Appeals Council's Remand Order. Alleged non-compliance with a Remand Order is not subject to judicial review. *See Boyd v. Astrue*, No. C10-1552, 2011 U.S. Dist. LEXIS 99468, at *4-5 (W.D. Wash. July 18, 2011)("Whether an ALJ complies with an Appeals Council remand order is an internal agency matter which arises before the issuance of the agency's final decision. Section 405(g) does not provide this Court with authority to review intermediate agency decisions that occur during the administrative review process."); *Thompson v. Astrue*, No. EDCV, 09-1182, 2010 U.S. Dist. LEXIS 75596, at *6 (C.D. Ca. July 27, 2010)("[T]he Court's role is to determine whether the ALJ's final decision is supported by substantial evidence, not whether the ALJ complied with the Appeals Council's remand order.").

Moreover, this Court notes that the Appeals Council did not expressly direct the ALJ to obtain a consultative examination.  The Appeals Council directed the ALJ to "further develop the record" regarding Plaintiff's mental impairments. (T at 418). The ALJ did undertake a thorough review and reexamination of all of the record evidence (including the evidence concerning mental health limitations and

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

significant additional evidence produced on remand), and the ALJ provided a detailed explanation, with citations to the medical record, to support his conclusions.

This Court will, however, consider whether the ALJ's failure to obtain a consultative psychiatric examination was error, irrespective of whether the ALJ technically complied with the Remand Order. For the following reasons, this Court finds that a consultative examination was not necessary.

Plaintiff testified that he has never had a driver's license because he is afraid to drive. (T at 53). He stopped working due to severe chest pain and soon thereafter underwent surgery for a cardiac valve replacement. (T at 53, 341). Plaintiff found the cardiac event "[r]eally, really incredibly" frightening. (T at 53). Since then, he lacks energy and motivation, has had difficulty sleeping, and feels "[t]remendously depressed." (T at 54). He has difficulty with concentration and is not able to attend to a half-hour television program. (T at 55). He experiences anxiety, pressure in his chest, and an inability to focus. (T at 55-56). Plaintiff testified that he has gained 95 pounds since the cardiac event. (T at 56). He has difficulty falling asleep and fears he will not wake up due to his heart condition. (T at 59).

Plaintiff was prescribed Zoloft and Xanax for depression and anxiety. (T at 607). In July of 2009, Kyoko Cleveland, a mental health counselor, examined Plaintiff and completed a psychological/psychiatric evaluation for the State

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

Department of Social and Health Services.  Ms. Cleveland's assessment was co-signed by Dr. Harry Kramer, a psychologist. (T at 558). Ms. Cleveland and Dr. Kramer assessed depressed mood and sleep disturbance of moderate severity, mild concentration difficulties, and marked feelings of hopelessness and helplessness. (T at 553).  They diagnosed major depressive disorder (recurrent, moderate) and assigned a Global Assessment of Functioning ("GAF")[3] score of 55 (T at 555), which is indicative of moderate symptoms or difficulty in social, occupational or education functioning. *Amy v. Astrue*, No. CV-11-319, 2013 U.S. Dist. LEXIS 2297, at *19 n.2 (E.D.Wa Jan. 7, 2013).

Ms. Cleveland and Dr. Kramer assessed no limitation with regard to Plaintiff's ability to understand, remember, and follow simple instructions or exercise judgment and make decisions. (T at 556).  They found mild limitations as to learning new tasks and performing routine tasks and moderate limitation with respect to understanding, remembering, and following complex instructions. (T at 556).  Ms. Cleveland and Dr. Kramer opined that Plaintiff had no limitation with regard to social functioning, except for some moderate difficulties maintaining

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

personal hygiene and appearance. (T at 556).   They found no limitation as to Plaintiff's ability to maintain appropriate behavior in a work setting. (T at 556).

There is no question that "the ALJ has a duty to assist in developing the record." *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. §§ 404.1512(d)-(f); *see also Sims v. Apfel*, 530 U.S. 103, 110-11, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . .").   One of the tools the ALJ has to develop the record is the ability to order a consultative examination, *i.e.*, "a physical or mental examination or test purchased for [a claimant] at [the Commissioner's] request and expense." 20 C.F.R. §§ 404.1519, 416.919.

However, the Commissioner "has broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001)(quoting *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). "The government is not required to bear the expense of an examination for every claimant." *Id.* (citing 20 C.F.R. §§ 404.1517-1519t, 416.917-919t).

Here, the record contained an assessment by an examining counselor and psychologist (the Cleveland/Kramer opinion discussed above). The ALJ carefully

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

considered that assessment, along with Plaintiff's subjective complaints,[4] and concluded that (a) further development of the record was not necessary and (b) Plaintiff retained the RFC to perform the mental demands of basic work activity. (T at 343). Plaintiff has not demonstrated that the record was inadequate for the ALJ to assess his mental health limitations. The ALJ's RFC determination, which was consistent with the Cleveland/Kramer assessment, is supported by substantial evidence and the decision not to obtain a consultative examination was a valid exercise of the "broad latitude" afforded to the Commissioner.

---

[4] The ALJ noted that Plaintiff had not sought counseling from a free or low-cost mental health clinic. (T at 343). Although this is in tension with *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that "it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"), at least one court has found *Nguyen* distinguishable where the claimant alleged mental impairments secondary to a heart attack. *See Walton v. Colvin*, No. 11-cv-01384, 2013 U.S. Dist. LEXIS 82786, at *28-29 (D. Or. May 16, 2013)(holding that because claimant "had knowledge that she suffered a mental impairment because she described a discrete moment when her mental functioning changed [*i.e.* the heart attack]; . . . it was not improper for the ALJ to infer that [claimant's] mental impairments were not as severe as alleged because she failed to consistently seek mental care."); *see also Frost v. Astrue*, No. 11-cv-05753, 2012 U.S. Dist. LEXIS 117215, at *23-24 (W.D. Wash. Aug. 1, 2012) (affirming ALJ's decision to discount credibility in the absence of evidence that failure to follow through with mental health treatment was due to lack of insight into condition). Moreover, any arguable error in this regard was harmless in light of the other, legitimate grounds on which the ALJ relied, including the Cleveland/Kramer assessment. *See McTaggart v. Comm'r of SSA*, 480 Fed. App. 459, 461 n.2 (9th Cir. 2012)(finding improper consideration of lack of mental health treatment harmless error).

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

## C.    Handling

In August of 2007, Dr. Karen Stout, Plaintiff's treating cardiologist, completed a physical evaluation form in which she indicated that Plaintiff would have moderate limitations with regard to several basic work-related activities, including handling. (T at 536).  She opined that Plaintiff could perform sedentary work, provided he was not required to perform "any bearing down to move an object, i.e. no weightlifting." (T at 536).

The first ALJ discounted this opinion on the erroneous assumption that Dr. Stout was a State Agency evaluator (instead, Dr. Stout is a treating physician who completed an evaluation form for the State Agency). (T at 21-22).  The Appeals Council ruled that the ALJ did not adequately evaluate Dr. Stout's opinion given her status as a treating physician and directed "[f]urther consideration of Dr. Stout's opinion" on remand. (T at 417).

ALJ Mangrum considered Dr. Stout's opinion and correctly identified her as a treating physician. (T at 342).  The ALJ's RFC determination is generally consistent with Dr. Stout's assessment (which found that Plaintiff retained the ability to perform "sedentary work").  However, the RFC assessment did not contain any limitation regarding handling.  Plaintiff challenges the lack of a handling limitation.

This Court finds the ALJ's decision supported by substantial evidence.  First, Dr. Stout did not note any clinical findings or other objective evidence in support of a handling limitation. The ALJ is not obliged to accept a treating source opinion that is "brief, conclusory and inadequately supported by clinical findings." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir. 2007) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).   The Commissioner suggests that Dr. Stout's handling limitation, considered in context, was meant to indicate that Plaintiff would have a difficult time handling heavy objects, as opposed to being limited with respect to the sort of repetitive hand-finger actions frequently required for sedentary work. *See* SSR 38-10. This is a plausible interpretation.

Dr. Paul Tompkins, another treating physician, opined that Plaintiff could perform medium work. (T at 542).  He did not indicate any limitation with regard to handling. (T at 542).  Dr. Laura Lascar, another treating physician, concluded that Plaintiff needed to avoid "strenuous physical activity," but could "perform desk jobs." (T at 224).  Dr. Lascar also did not assess any handling limitation. (T at 223). This Court finds no error with regard to the ALJ's decision not to include a handling limitation in the RFC assessment.

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

**D.    Medical Opinions**

The record contains a Physician's Certification for Medicaid completed by Dr. J. Dalton on May 8, 2006. Dr. Dalton noted that Plaintiff has been on "GAU [a Washington State disability benefits program] for over a year." (T at 523). Dr. Dalton noted Plaintiff's various medical conditions. (T at 523).

In August of 2012, Dr. Brent Packer, a non-examining State Agency review physician, completed a review in which he opined that Plaintiff was limited to less than sedentary work activity due to his inability to stand or walk for even brief periods of less than 2 hours. (T at 572). Dr. Packer noted that he had not reviewed Plaintiff's complete medical record. (T at 572).

The ALJ did not discuss Dr. Dalton's certification form and gave little weight to Dr. Packer's assessment. (T at 342). Plaintiff challenges these aspects of the ALJ's decision. This Court finds no reversible error. Dr. Dalton's certification form did not contain any significant or probative evidence. In particular, it did not include any functional limitations or clinical findings and the physician left blank a section on the form for comments regarding whether Plaintiff met Social Security disability criteria. (T at 523). "[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting *Black v. Apfel*, 143 F.3d

383, 386 (8th Cir. 1998)). An ALJ is not required to discuss evidence that "is neither significant nor probative." *Id*.

Dr. Packer's opinion was based on an incomplete record and was not supported by any clinical findings.  It was also contradicted by other evidence in the record, including treating physician opinions, that indicated Plaintiff was capable of at least sedentary work. (T at 272, 515, 521, 536, 542, 566, 571).  Plaintiff argues that the ALJ should have weighed the evidence differently and resolved the conflict in favor of Dr. Packer's opinion, but it is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, this Court may not substitute its judgment for that of the Commissioner. *Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Here, the ALJ's assessment was supported by substantial evidence and must be sustained.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)(holding that if evidence reasonably supports the Commissioner's decision, the reviewing court must uphold the decision and may not substitute its own judgment).

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB

## V. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED summary judgment and that Plaintiff's motion for judgment summary judgment is DENIED.

## VI. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No.  16**, is **DENIED.**

The Commissioner's motion for summary judgment, **Docket No. 17**, is **GRANTED**.

The District Court Executive is directed to file this Decision and Order, provide copies to counsel, enter judgment in favor of the Commissioner and **CLOSE** the file.

DATED this 17th day of June, 2014.

/s/Victor E. Bianchini

VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – PEDERSON v COLVIN 13-CV-03077-VEB